**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **DANIELLE STOSSIER,** | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) |
| | ) |
| **INOVA HEALTH CARE SERVICES,** | ) |
| **8110 Gatehouse Rd, Ste. 200** | )    **Case No. 1:20-cv-1386** |
| **Falls Church, VA 22042,** | ) |
| | ) |
| **Serve resident Agent:** | ) **JURY TRIAL DEMANDED** |
| | ) |
| **CT Corporation System,** | ) |
| **4701 Cox Rd, STE 285** | ) |
| **Glen Allen, VA 23060,** | ) |
| | ) |
| *Defendant*. | ) |

**CIVIL COMPLAINT FOR EQUITABLE AND**
**MONETARY RELIEF AND DEMAND FOR JURY TRIAL**

Plaintiff Danielle Stossier, by and through undersigned counsel, states for her Complaint

against Defendant INOVA Health Care Services (INOVA) as follows:

**INTRODUCTION**

1.      Danielle Stossier worked as a registered nurse in the systems float pool

department at INOVA's Fairfax Medical Campus from in or about August 2012 until on or about

January 27, 2020.

2.      INOVA failed to accommodate and then terminated Stossier because of her

disabilities.  INOVA's actions violated the American with Disabilities Act of 1990, 42 U.S.C. §

1201, *et seq*.

1

3.      INOVA's unlawful discrimination and retaliation caused Stossier to suffer economic and non-economic damages.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction under 28 U.S.C. § 1331, because Stossier's claims arise under the Americans with Disabilities Act 42 U.S.C. § 12019, *et seq.*

5.      Venue is this district is proper under 28 U.S.C. § 1391 because it is the judicial district where the unlawful employment practices were committed and because INOVA resides in this district.

6.      Stossier filed her EEOC Charge No. 570-2020-02248 on or about July 20, 2020 alleging disability discrimination.  The EEOC issued Stossier a Notice of Right to sue on or about August 20, 2020.

## PARTIES

7.      Plaintiff Danielle Stossier is an individual residing in Alexandria, VA 22306.

8.      Defendant INOVA Health Care Services is a Virginia corporation with its principal place of business and headquarters at 8110 Gatehouse Road, Suite 200, Falls Church, VA 22042.

## FACTUAL ALLEGATIONS

9.      Stossier started her career with INOVA as a Clinical Technician, working from in or about July 2006 until in or about August 2009.

10.     In or around August 2009, Stossier left INOVA to work at Prince George's Hospital Center as a nurse, and then Stossier returned to INOVA on or about August 5, 2012, where Stossier worked as a Registered Nurse in the systems pool for the Emergency Room.

2

11.     As a RN in the systems pool, Inova could assign Stossier to any of INOVA's hospitals within the Northern Virginia area, including INOVA Fairfax and Mount Vernon hospitals, as well as INOVA's stand-alone emergency rooms.

12.     Throughout Stossier's tenure at INOVA, Stossier's supervisors rated her as either meeting or exceeding expectations.  Stossier's last performance review, issued on or about October 25, 2019, described Stossier as "very knowledgeable," "a great mentor," "compassion[ate] in patient care," and "representing INOVA's mission and values."

13.     In or around November 2018, Stossier's physician diagnosed her with depression and anxiety.  According to the National Institute of Health, symptoms of depression include "difficulty sleeping, early-morning awakening, or oversleeping."   Stossier worked with her physician to develop a treatment plan, including prescribing her Lexapro on or about February 8, 2019.

14.     On or around November 30, 2019, Stossier's physician prescribed her with Wellbutrin, an oral medication taken to treat anxiety and depression even though its common side effects include insomnia. Stossier's physician prescribed her Wellbutrin because he deemed it to be a required treatment in his judgment as a medical professional to treat her anxiety and depression.  Additionally, Wellbutrin is the first line of treatment for depression, and frequently prescribed with Lexapro.

15.     Stossier worked night shifts in the ER at that time, and she rarely worked day shifts.

16.     Generally, when Stossier worked night shifts, she took Wellbutrin in the evening at approximately 6:00 p.m.  On days that she was off, she took Wellbutrin in the morning. Stossier was trying to find the proper pattern and schedule to treat her depression, while also

3

working the night shift. Stossier expected it would take several months to adjust to her new medications.  Wellbutrin's side effects caused her to suffer from insomnia.  Stossier's inability to sleep caused her to feel drowsy at other times, especially when alternating between day and night shift.

17.     On or about December 14, 2019, Dana Lowry, Stossier's Nurse Manager, called Dana to ask about a shift Stossier worked in November. Lowry reported that a director had informed her that Stossier had fallen asleep during a shift at a nursing station. As this reportedly happened at a nursing station, Stossier would not have been caring for or communicating with any patients when it occurred.  Lowry could not reveal who reported the incident and produced no evidence of the claim, which Stossier contested. Nevertheless, Lowry issued Stossier a verbal warning.

18.     On or about January 15, 2020, Stossier attended a training class for instructors of newly hired medical aides.  During the class Stossier briefly fell asleep. Stossier then went to her physician's office to discuss a new treatment plan to address Wellbutrin's side effects, and her physician prescribed her Ambien to address Stossier's insomnia and Adderall to counteract the drowsiness Stossier she was experiencing as the result of taking Wellbutrin.

19.     At approximately 4:30 p.m. on or about January 15, 2020, Stossier informed Lowry that she was on her way to her physician's office to resolve her medicine's side effects and could meet with Lowry the following day.  Lowry stated that was acceptable, but Lowry contacted Stossier the following day to delay this conversation until January 17, 2020.

20.     On or about January 17, 2020, Stossier met with Lowry and Ghalia Nabeed, a human resources specialist at INOVA.  Lowry and Nabeed opened the meeting by asking Stossier about her health, and Stossier again disclosed that her physicians diagnosed her with

anxiety and depression.  Stossier again reported that she took Wellbutrin to treat these disabilities and that the side effects from the medication, in conjunction with moving from day to night shifts, caused her drowsiness.  Stossier then reported that she spoke with her physician on or about January 15, 2020, to develop a *new* medical treatment plan to avoid drowsiness in the future.

21.     Stossier reported that her physician prescribed her Ambien to address the insomnia and Adderall to counteract the drowsiness she was experiencing as the result of taking Wellbutrin, as her physician was trying an alternative treatment plan to minimize the side effects Stossier was experiencing.

22.     Lowry responded by declaring that INOVA was placing Stossier on paid administrative leave and initiating an investigation into Stossier despite her physician's new plan to resolve the side effects of the medical treatment for her disabilities.  Lowry also did not offer to engage in the interactive process to inquire into the new treatment plan or explore any accommodations.

23.     Thereafter INOVA did not contact Stossier or Stossier's physician. INOVA also did not collect any medical documentation about Stossier's condition or ask her about the new treatment plan she reported to INOVA or approach Stossier to discuss reasonable accommodations for her disabilities.

24.     On or about January 27, 2020, Lowry notified Stossier that INOVA was terminating her employment, effective immediately. Stossier responded to Lowry that she had reported her disabilities to INOVA and asked how could INOVA terminate her.  In response Lowry said that she was "sorry" and she was being terminated because that Stossier "was not

safe", even though Stossier was in the process of working with her physician to improve the side effects of medication and the symptoms of her disability.

25.     As the result of INOVA's illegal discriminatory and retaliatory actions, Stossier has sustained economic damages and mental anguish, and she will continue to sustain damages into the foreseeable future.

## COUNT I
## Discrimination
## Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

26.     Stossier hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

27.     At all relevant times to this complaint, Stossier was a "person" and an "employee," and INOVA was an "employer" and a "covered entity" as defined by the ADA.

28.     Stossier has several medical conditions that constitute a "disability" as defined by 42 U.S.C. § 12102(1)(A).

29.     Stossier's anxiety and depression, and the side effects of prescribed medications are all medical conditions that substantially limit one or more of his major life activities, including work.

30.     Stossier could and did perform all the essential functions of her job with reasonable accommodations for her disabilities.

31.     As evidenced by her satisfactory performance ratings, Stossier met or exceeded INOVA's performance expectations in her position.

32.     Stossier put INOVA on notice of her disabilities on or about January 17, 2020 when she disclosed her qualifying disabilities to Dana Lowry, Stossier's Nurse Manager and direct supervisor.

6

33.     Stossier suffered an adverse action when INOVA placed her on administrative leave on or about January 17, 2020 and again on or about January 27, 2020 when INOVA terminated her employment.

34.     Stossier's discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination.

35.     An employee who suffers an adverse action as a result of falling asleep at work has a claim under the ADA when the falling asleep is connected to her disability. *See Riddle v. Hubbell Lighting, Inc.*, 2013 WL 3788790, at *2 (W.D. Va. July 19, 2013) (employee had viable ADA claim when terminated after he fell asleep at work due to the disruption of his sleep cycle caused by disabling fibromyalgia); *see also Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1061-62 (7th Cir. 2014) (employee had viable ADA claim when employer terminated her employment after she fell asleep at work due to her disabling narcolepsy without even engaging in an interactive process to inquire into any reasonable accommodations that could address the issue).  Further, the Third Circuit held that adverse side effects of a medication constitute a disability under the ADA. *Sulima v. Tobyhanna Army Depot et al,* 602 F.3d 177 (3rd Cir. 2010).

36.     INOVA discriminated against Stossier because of her disabilities when INOVA placed her on administrative leave and subsequently terminated her employment.

37.     Pursuant to 42 U.S.C. § 12112(a), it is unlawful for a covered entity to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees."

38.     INOVA's purported legitimate business reason for its decision to terminate Stossier is pretext for its discrimination in violation of the ADA.

39.     Stossier has been damaged because of INOVA's unlawful acts.

**COUNT II**
**Retaliation**
**Americans with Disabilities Act, 42 U.S.C. § 12101,** *et seq.*

40.     Stossier hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

41.     At all relevant times to this complaint, Stossier was a "person" and an "employee," and INOVA was an "employer" and a "covered entity" as defined by the ADA.

42.     Stossier has several medical conditions that constitute a "disability" as defined by 42 U.S.C. § 12102(1)(A).

43.     Stossier's anxiety and depression, and the side effects of prescribed medications are all medical conditions that substantially limit one or more of his major life activities, including work.

44.     Stossier could and did perform all the essential functions of her job with reasonable accommodations for her disabilities.

45.     As evidenced by her satisfactory performance ratings, Stossier met or exceeded INOVA's performance expectations in her position.

46.     Stossier engaged in legally protected activity under the ADA on or about January 16, 2020 when she disclosed her qualifying disabilities to Dana Lowry, Stossier's Nurse Manager and direct supervisor.

47.     At all relevant times to this complaint, INOVA had a duty under the ADA not to retaliate against Stossier for exercising her rights under the ADA.

48.     INOVA willfully and intentionally retaliated against Stossier because she exercised her rights under the ADA.

49.     INOVA violated the ADA when it retaliated against Stossier by placing her on administrative leave and then terminating her.

50.     Stossier suffered damages because of INOVA's unlawful acts.

## COUNT III
## Failure to Accommodate
## Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

51.     Stossier hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

52.     At all relevant times to this complaint, Stossier was a "person" and an "employee," and INOVA was an "employer" and a "covered entity" as defined by the ADA.

53.     Stossier has several medical conditions that constitute a "disability" as defined by 42 U.S.C. § 12102(1)(A).

54.     Stossier's anxiety and depression, and the side effects of prescribed medications are all medical conditions that substantially limit one or more of his major life activities, including work.

55.     Stossier could and did perform all the essential functions of her job with reasonable accommodations for her disabilities.

56.     As evidenced by her satisfactory performance ratings, Stossier met or exceeded INOVA's performance expectations in her position.

57.     Stossier put INOVA on notice of her disabilities on or about January 16, 2020 when she disclosed her qualifying disabilities to Dana Lowry, Stossier's nurse manager and direct supervisor.

58.     INOVA failed to engage in the interactive process after Stossier disclosed her disabilities in order to identify a suitable accommodation.

59.     Stossier could have continued performing her job without an undue burden on INOVA had INOVA engaged in the interactive process.

60.     INOVA failed to provide any reasonable accommodation.

61.     As a result of INOVA's failure to engage in the interactive process and to accommodate Stossier, she has been damaged as a result of INOVA's unlawful acts.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing allegations of unlawful discrimination and retaliation, Plaintiff Danielle Stossier respectfully requests that this Court award the following relief:

1. Immediate reinstatement and immediate abatement of INOVA's unlawful conduct toward her, or alternatively, front pay;

2. Economic damages for lost wages as a result of INOVA's unlawful discrimination and retaliation;

3. Compensatory (non-economic) damages, including damages for emotional distress and loss of reputation;

4. Punitive damages to punish INOVA for its malicious acts of discrimination and retaliation against Stossier and to deter INOVA from similar discriminatory and retaliatory conduct toward other employees;

5. Liquidated damages equal to Stossier's back pay;

6. Injunctive or other equitable relief, as this Court may deem appropriate;

7. Reasonable litigation costs, including reasonable attorney's fees; and

8. Any other just and equitable relief this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff Danielle Stossier demands a trial by jury for any and all issues proper to so be tried.

Dated:  November 13, 2020.                    Respectfully submitted,


/s/ Anita M. Chambers
Anita M. Chambers, VA Bar # 89067
The Employment Law Group, P.C.
888 17th Street, N.W., 9th floor
Washington, D.C. 20006
(202) 261-2821
(202) 261-2835 (facsimile)
achambers@employmentlawgroup.com
*Counsel for Plaintiff Danielle Stossier*